IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ARTHUR and GAIL COWARD,

                Plaintiffs,

  vs.

MICHAEL GILROY, *et al.,*

                Defendants.

_____

Civ. Action No.
3:05-CV-0285 (TJM/DEP)

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFFS:

OFFICE OF RONALD BENJAMIN     RONALD BENJAMIN, ESQ.
P.O. Box 607
126 Riverside Drive
Binghamton, New York 13902-0607

FOR DEFENDANTS:

HON. ELIOT SPITZER               MICHAEL McCARTIN, ESQ.
OFFICE OF ATTORNEY GENERAL
The Capitol
Albany, New York 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

Plaintiffs Arthur and Gail Coward, who until recently ran a family care home pursuant to an operating certificate issued by the New York State Office of Mental Retardation and Development Disabilities

("OMRDD") but whose certificate has since been revoked, have commenced this action alleging deprivation of their federal civil rights. Although their initial complaint was significantly more expansive, plaintiffs' claims have been winnowed since its filing as a result of the court's dismissal of certain of their causes of action and the subsequent filing of a narrower, amended complaint. In that revised pleading, plaintiffs allege that the revocation of their license was in response to their having engaged in protected speech, in violation of their rights under the First Amendment to the United States Constitution, and assert claims under 42 U.S.C. § 1983 seeking compensatory and punitive damages as well as an order directing reinstatement of their operating certificate.

Currently pending before the court is a discovery dispute which centers upon plaintiffs' request for disclosure by the defendants of the confidential investigative report which led to the suspension of their operating certificate. While not contesting the relevance of that report to the issue at the heart of the case – the motivation for the revocation of plaintiffs' license – defendants argue that the report is exempt from disclosure and entitled to absolute protection under relevant state law provisions including, *inter alia*, N.Y. Education Law § 6527. For the reasons set forth below I find that discovery in this action is not

circumscribed by the privilege embodied in that statutory provision, and thus order disclosure of the investigative report.[1]

I.    BACKGROUND[2]

Up until December of 2004, at the times relevant to their claims plaintiffs managed a family care home pursuant to an operating certificate issued by the OMRDD, providing assisted living for developmentally disabled individuals, referred to as "consumers".  For a significant period of time prior to December, 2004, three consumers, each of whom suffers from mental retardation, resided with the plaintiffs.

In August of 2004 one of those three consumers was diagnosed with breast cancer.  Upon learning that the consumer was scheduled to undergo a double mastectomy, plaintiffs suggested to defendant Deborah Curry, a registered nurse employed by the OMRDD, that a second medical opinion should be obtained prior to surgery.  Arrangements were subsequently made for the consumer to see another physician, although plaintiffs continued to complain in light of the fact that the second

---

[1]  The investigative report in issue has been submitted to the court and reviewed by me *in camera*.

[2]  Because the permissible scope of discovery is dependent upon relevance of the information or materials sought to the claims or defenses in an action, *see* Fed. R. Civ. P. 26(b), I have drawn the following recitation of facts from plaintiffs' amended complaint, as well as the decision of Senior District Thomas J. McAvoy, issued on August 24, 2005, granting in part, but otherwise denying, defendants' motion for summary judgment.  Dkt. No. 31.

3

physician worked in the same office as the doctor who had made the original diagnosis and recommendation regarding course of treatment.

By letter dated September 4, 2004, plaintiffs were notified that the OMRDD had temporarily suspended their operating certificate to provide assisted living for mentally retarded adults in their home. A later notice, dated October 1, 2004, advised the Cowards of the scheduling of a post-suspension hearing to address the agency's decision. At the conclusion of the hearing, at which plaintiffs were given opportunity to cross-examine witnesses called by the OMRDD and present their own evidence, a hearing officer issued a decision dated October 24, 2004, upholding the temporary suspension.

During the pendency of that process, which was not pursued further by the Cowards, they were notified by letter dated November 4, 2004 of the agency's intention to permanently revoke their operating certificate. In that notice, plaintiffs were informed of their right to request a hearing to challenge the proposed revocation in writing, within thirty days of their receipt of that letter. The letter further advised that in the event such a hearing was not requested, the operating certificate would be revoked. In light of plaintiffs' failure to interpose a timely request for a hearing, their operating certificate was revoked, and they were advised of that fact by

4

letter dated December 15, 2004.

## II.    PROCEDURAL HISTORY

Plaintiffs commenced this action on March 3, 2005. Dkt. No. 1. In their original complaint plaintiffs named, as defendants, Michael Gilroy, the Family Care Coordinator for the New York State OMRDD, and Patricia A. McDonald, the Director of the Broome Developmental Disabilities Services Office, as well as several John and Jane Doe defendants, and alleged various procedural due process deprivations including a "stigma-plus" violation based upon defendants' alleged failure to provide them with a name-clearing hearing, as well as violation of their rights under the First Amendment. *Id.*

Simultaneously with their joinder of issue by the filing of an answer on May 20, 2005, Dkt. No. 4, defendants moved for dismissal of plaintiffs' procedural due process claims. Dkt. No. 3. That motion, which was subsequently converted by the court to one seeking summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, was granted by order issued by Senior District Judge Thomas J. McAvoy on August 24, 2005. Dkt. No. 31. Plaintiffs subsequently filed an amended complaint on October 5, 2005 naming three OMRDD employees as additional defendants, and asserting two causes of action both alleging violation of

5

their First Amendment rights.  Dkt. No. 40.

During the course of pretrial discovery plaintiff has sought access to the confidential investigative report which led to the suspension, and ultimately the revocation, of their operating certificate.  The parties' disagreement over access to that report, based upon defendants' refusal to produce it in response to plaintiffs' request, has been the subject of letter briefing, initially by the defendants, seeking a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, *see* Dkt. No. 29, and later in response by the plaintiff, filed on September 12, 2005, requesting the issuance of an order compelling discovery of the disputed report.  Dkt. No. 37.

III.   DISCUSSION

   A.   Burden of Proof

As a party resisting the disclosure of otherwise relevant information, defendant bears the burden of establishing a basis for the entry of the requested protective order.  *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988).  This allocation of the burden of proof is particularly applicable in this instance since, as the parties seeking to benefit from a claim of privilege, it is incumbent upon the defendants to establish each element required to support a finding of privilege.  *Von Bulow v. Von Bulow*, 811

F.2d 136, 144 (2d Cir.), *cert. denied sub. nom.*, *Reynolds v. Von Bulow by Auersperg*, 481 U.S. 1015, 107 S. Ct. 1891 (1987).

    B.    <u>Governing Federal Principles</u>

Plaintiffs' request for discovery is governed in the first instance by Rule 26(b) of the Federal Rules of Civil Procedure, which provides, in relevant part, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party[.]" Fed. R. Civ. P. 26(b)(1). As is apparent from the face of the rule itself, the concept of relevance under this provision is limited to exclude matters which are subject to a valid privilege. *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992) (citing *Hickman v. Taylor*, 329 U.S. 495, 507-08, 67 S. Ct. 385, 391-92 (1947)).

While acknowledging the relevance of the requested report, defendants cite a statutory, state law privilege as trumping the discovery requests now at issue. Before addressing the specific state law exemption claimed by the defendant, I must first address the applicability of the state law privilege in a case such as this, in which exclusively federal claims are interposed by the plaintiffs. The issue at hand is governed, in the first instance, by Rule 501 of the Federal Rules of Evidence, which provides that

7

> [e]xcept as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501; *see Johnson v. Nyack Hospital*, 169 F.R.D. 550, 557 (S.D.N.Y. 1996). This rule, inspired by earlier Supreme Court decisions speaking to the issue, including, *inter alia*, *Funk v. United States*, 290 U.S. 371, 54 S. Ct. 212 (1933), was intended to permit the continued "'evolutionary development of testimonial privileges'" in the federal courts to allow for case-specific consideration of both context and the type of privilege involved. *Jaffee v. Redmond*, 518 U.S. 1, 8-9, 116 S. Ct. 1923, 1927-28 (1996) (quoting *Trammel v. United States*, 445 U.S. 40, 47, 100 S. Ct. 906, 910 (1980)).

Plaintiffs' claims in this action are exclusively federal in nature, having been asserted under 42 U.S.C. § 1983. Because the drafters of Rule 501 envisioned the development of a uniform federal common law of

privilege to be applied to federal claims, rejecting as an unsuitable alternative the importation of divergent state rules of privilege for application to federal claims, *see Jaffee*, 518 U.S. at 8-9, 116 S. Ct. at 1927-28, the matter is subject to analysis under federal law. *Johnson*, 169 F.R.D. at 357-58; *King v. Conde,* 121 F.R.D. 180, 187 (E.D.N.Y. 1988) (citations omitted) ("Questions of privilege in federal civil rights cases are governed by federal law."). As District Judge Weinstein wrote in *King*,

> [s]imple direct application of [a] state rule would be undesirable and improper. It would often frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983.

*King*, 121 F.R.D. at 187 (citations omitted)*.*

This does not mean, however, that a state court privilege such as that now asserted by the defendants takes on no significance in a case such as this. State rules, particularly those which evince strong policy considerations implicating significant privacy interests, play a role in deciding a discovery dispute of this nature, despite involving strictly federal claims. *King*, 121 F.R.D. at 187. A state privilege such as that now urged by the defendants may help inform a court's evaluation of a discovery dispute provided that it does not do substantial injustice to

9

important federal interests, including in permitting broad discovery and fostering truth seeking. *Id.* at 187-88. When these significant federal interests in the free exchange of information and full illumination of evidence relevant to claims or defenses in a case compete with a state's interests in confidentiality, the court must balance the two to determine which should prevail. *King*, 121 F.R.D. at 187-89.

## C. Application of Balancing Test to Circumstances Now Presented

Were the circumstances now presented governed strictly by state law, disclosure of the disputed investigative report would be unconditionally prohibited under N.Y. Education Law § 6527(3).[3] *Katherine F. ex rel. Perez v. State*, 94 N.Y.2d 200, 203-04, 723 N.E.2d

---

[3] That section provides, in pertinent part, that

> [n]either the proceedings nor the records relating to performance of a medical or a quality assurance review function or participation in a medical and dental malpractice prevention program nor any report required by the department of health pursuant to section twenty-eight hundred five-l of the public health law described herein, <u>including the investigation of an incident reported pursuant to section 29.29 of the mental hygiene law</u>, shall be subject to disclosure under article thirty-one of the civil practice law and rules except as hereinafter provided or as provided by any other provision of law.

N.Y. Education Law § 6527(3) (emphasis added).

10

1016, 1017-18, 702 N.Y.S.2d 231, 232-33 (1999). That section exempts three types of records from disclosure, including investigations associated with incident reports filed under N.Y. Mental Hygiene Law § 29.29.[4] The manifest intent of that section "is to promote the quality of care through self-review without fear of legal reprisal."[5] *Katherine F.*, 94 N.Y.2d at 205, 723 N.E.2d at 1018, 702 N.Y.S.2d at 233; *see also Logue v. Velez*, 92 N.Y.2d 13, 16-17, 699 N.E.2d 365, 366-67, 677 N.Y.S.2d 6, 7-8 (1998).

Having reviewed the federal landscape, I am unable to find a federal counterpart to the privilege recognized in section 6527. Several federal courts have had occasion to address the applicability of section 6527 or similar statutes of other states in cases involving the pursuit of federal

---

[4] The term "incident reports" is defined to include "reports of accidents and injuries affecting patient health and welfare . . . at departmental facilities." N.Y. Mental Hygiene Law § 29.29. Unquestionably – and plaintiffs do not argue otherwise – the report in question qualifies under that provision.

[5] Plaintiff attempts to ameliorate the otherwise harsh results of section 6527 in this case by arguing that notwithstanding its unconditional language, the statute can be overridden by court order based upon a finding that when balanced, the need for the information outweighs the overarching policy considerations which underlie that section. In making this argument plaintiff relies upon N.Y. Mental Hygiene Law § 33.13, relating to disclosure of confidential patient records, and cases interpreting that section. It should be noted, however, that in stark contrast to the unyielding language of section 6527, section 33.13 specifically provides, as an exception to the confidentiality embodied within the provision, that disclosure may be made "pursuant to an order of a court of record requiring disclosure upon a finding by the court that the interests of justice significantly outweigh the need for confidentiality." N.Y. Mental Hygiene Law § 33.13(c)(1). *See, e.g., Villano v. State*, 127 Misc.2d 761, 761, 487 N.Y.S.2d 276, 278 (Ct. Cl. 1985); *Office of Mental Retardation & Developmental Disabilities v. Mastracci*, 77 A.D.2d 473, 475-76, 433 N.Y.S.2d 946, 948-49 (4th Dept. 1980).

claims, and have found no federal common law privilege warranting application of the exemption provided for in such statutes. *See*, *e.g.*, *Tortorici v. Goord*, 216 F.R.D. 256, 259 (S.D.N.Y. 2003) (rejecting application of section 6527 in a civil rights action involving a prison inmate's suicide); *Syposs v. United States*, 179 F.R.D. 406, 409 (W.D.N.Y. 1998) (section 6527 not applied in case brought under Federal Tort Claims Act); *Johnson*, 169 F.R.D. at 557-58 (declining to apply section 6527 to an action brought under 42 U.S.C. §§ 1981 and 1985(3)). Each of those determinations was based upon a finding that the federal courts do not recognize a peer review privilege embodied in Education Law § 6527. *See id.*; *see also Rdzanek v. Hospital Serv. Dist. No. 3*, No. Civ. A. 03-2585, 2003 WL 22466232, at *2-*4 (E.D. La. Oct. 29, 2003) (applying federal law of privilege and finding no federal peer review privilege). *Contrast Jaffee*, 518 U.S. at 12, 116 S. Ct. at 1929 (finding a need to recognize a psychotherapist privilege under Rule 501 based upon the fact that all fifty states and the District of Columbia have to some degree codified such a privilege).

  Having reviewed the matter carefully, I am convinced to follow these cases, discerning no basis to distinguish between the peer review considerations at issue in those cases and the investigative report

12

implicated in this case. In making this determination, I have taken into account the policy considerations underlying the state privilege now urged by the defendants, but find that the state's interests in protecting the integrity of such investigative reports is far outweighed in this case by the federal interest in permitting the full disclosure sought by the plaintiff. To hold otherwise would deny plaintiffs one of the most critical pieces of evidence necessary to address defendants' motivation for revoking their operating license in order to allow them to challenge the reasons articulated and argue that they were pretextual and, instead, that the decision was in direct response to their having exercised protected rights under the First Amendment.

IV.   SUMMARY AND ORDER

  The dispute before the court illustrates the tension which can result from the interplay of competing considerations associated with federal policy favoring the free exchange of information in the context of litigated claims and defenses on the one hand, and on the other a countervailing state privilege having the effect of depriving a litigant of critical, highly relevant information. Mindful of the cautionary reminder that privileges run counter to the "fundamental principle that 'the public . . . has a right to every man's evidence'", *University of Pennsylvania v. EEOC*, 493 U.S.

182, 189, 110 S. Ct. 577, 582 (1990) (quoting *Trammel,* 445 U.S. at 50, 100 S. Ct. at 912), I have considered the privilege now being asserted by the defendants, but find that it is not supported by cases addressing the federal common law, nor are the state concerns which it seeks to vindicate sufficiently compelling to override the federal interests at stake. Accordingly, I conclude that the information sought, which is otherwise highly relevant, should be disclosed.

Based upon the foregoing, it is hereby ORDERED that as follows:

1) Defendants' motion for a protective order shielding from disclosure the results of an investigation conducted into an incident report involving plaintiffs' operation of a group home is DENIED, and plaintiffs' cross-motion for an order compelling disclosure of that document is GRANTED.

2) Within twenty (20) days of entry of an appropriate protective order governing the confidentiality of the report to be disclosed, defendants shall produce to plaintiff the investigative report in issue for inspection and, if desired, for photocopying at plaintiffs' expense. In the event the parties are unable to agree upon the terms of such a protective order, they may submit their differences to the court for resolution.

3) In accordance with this court's local rules, this order is stayed

for a period of ten (10) days in order to allow either side to appeal this ruling.  In the event no such appeal is filed, disclosure shall occur within twenty (20) days following the issuance of this order.  If such an appeal is filed, the stay is hereby extended until ten (10) days following disposition of the appeal.

     4)    The clerk is directed to promptly forward copies of this order to the parties via electronic means.

*David E. Peebles*
U.S. Magistrate Judge

Dated:    January 11, 2006
              Syracuse, NY